1

2

3

4

5

6

7 **THE DISTRICT COURT OF GUAM**

8

9 REYNALD LAPUEBLA,

CIVIL CASE NO. 19-00097

10              Plaintiff,

vs.

**ORDER**

11 Granting Defendants' Motion for

ALEJANDRO MAYORKAS, (Acting Summary Judgment (ECF No. 31)

12 Secretary) U.S. DEPARTMENT OF
HOMELAND SECURITY, U.S. CUSTOMS

13 AND BORDER PROTECTION,

14              Defendants.

15

16       Pending before the court is the Defendants' Motion for Summary Judgment (hereinafter

17 "Motion"). ECF No. 31. Upon reviewing the record before it and relevant case law, the court

18 hereby issues this Order **GRANTING** Defendants' Motion for Summary Judgment.

19   **I. Facts**

20       The case at hand concerns a sexual harassment/hostile work environment claim pursuant

21 to Title VII of the 1964 Civil Rights Act. The following is a summary of material facts with the

22 evidence construed in the light most favorable to the Plaintiff:

23      **1. Harassment**

24       On Monday, April 4, 2016, Plaintiff and nine other Customs and Border Protection

(hereinafter "Agency") employees engaged in a training exercise. Defendants' Concise Statement of Material Facts (hereinafter "DCS") No. 2, ECF No. 32. Training was being conducted by two other Agency employees, including Christopher Quenga, who had volunteered as instructors for the training. *Id.* at Nos. 3 and 4. Normally, Quenga had a different shift from Plaintiff. Dep. Tr. Reynald LaPuebla at 45, Ex. 1 to Plaintiff's Concise Statement of Material Facts (hereinafter "PCS"), ECF No. 43-1.

During the training, at least two photos were taken of Plaintiff. Plaintiff's Response and Counter to Agency's Material Facts (hereinafter "PRC") No. 7, ECF No. 43. At least one photo made it appear as if Plaintiff was sodomizing fellow Agency employee Lope. PCS No. 14, ECF No. 43. Sometime after the training, Quenga posted two of these photographs to a Facebook group whose members include thousands of Agency employees. DCS No. 11, ECF No. 32; PCS No. 6, ECF No. 43. The post elicited inappropriate comments from other group members, at least some of which made fun of Plaintiff, implying he was homosexual. Defs.' Ex. F, ECF No. 34-7. Quenga replied to some of these comments, also making fun of Plaintiff. *Id.*

On Thursday, April 7, 2016, Plaintiff and Lope found out about the photo at work from their co-workers; there was laughter. DCS No. 11, ECF No. 32. Plaintiff and Lope separately wrote their supervisors, including Former Port Director Kuchera, to complain about the post. *Id.* at No. 12 and Defs.' Ex. H, ECF No. 34-9. At some point, Quenga approached Plaintiff in the restroom at work attempting to discuss the post. PCS No. 61, ECF No. 43. Plaintiff refused to talk to Quenga because he was still upset. *Id.*

### 2. Employer Response

On April 7, 2016, Kuchera replied to Plaintiff and Lope separately indicating that he would address their concern the next day, and that he was seeking information regarding the post from both sides. Defs.' Ex. H, ECF No. 34-9. On the same day, Assistant Port Director

Aeverman sent an email to other supervisors regarding a one-page policy memo about using good judgment when posting on social media. PCS No. 33, ECF No. 43, and Pl.'s Ex. 10, ECF No. 43-1. On April 8, 2016, Kuchera sent an email expressing general concern over the Facebook group to the Agency's Joint Intake Center, which handles allegations of misconduct. PCS No. 35, ECF No. 43. On or around the same day, Plaintiff called Chief Fraim Leon Guerrero to complain about the post and the comments. *Id.* at No. 36.

At some point, Quenga was called into Kuchera's office to discuss the post. Defs.' Ex. D at 7, ECF No. 34-5. The following day, Quenga was called into Assistant Port Director Aevermann's office to discuss the post. *Id.* During both of these meetings, Quenga was ordered to delete the post. *Id.*[1]

April 10, 2016, Leon Guerrero sent an email to Quenga stating "I'm sure there was no ill intent on your part when posting the pictures/comments. Some officers if not most, prefer their privacy rather than being exposed especially via social media. Lesson learned for all as I'm sure other Ports are addressing these same issues; hopefully nobody gets compromised." Pl.'s Ex. 12 at 1, ECF No. 43-1. In the email, Leon Guerrero also praised Quenga for his performance conducting the training. *Id.* Later that same day, Kuchera told Plaintiff the matter was addressed. PCS No. 45, ECF No. 43. Later that evening, Quenga sent an email to Plaintiff and Lope, apologizing for violating their privacy rights, but not explicitly apologizing for the sexually charged comments. Opp'n at 13, ECF No. 42.

On April 12, 2016, Kuchera issued a formal Letter of Instruction to Quenga with written orders to remove the photos. DCS No. 24, ECF No. 32, and Defs.' Ex. N, ECF No. 34-15. The letter also stated, "this discussion and document are not disciplinary in nature. Rather, this

---

[1] Plaintiff disputes this evidence as hearsay. PRC No. 15, ECF No. 43. However, the court finds that this is not hearsay since Kuchera and Aevermann's orders are not offered for their truth, but rather for their effect on Quenga.

document is instructional in nature. It is meant both to (1) inform you about the fact that you are the subject of these allegations, and to (2) advise you that if you have engaged in the conduct described in the allegations, you must immediately cease and desist from such conduct." *Id.* Quenga deleted his post from the Facebook group, at the latest, soon after receiving this letter of instruction. Opp'n at 14, ECF No. 42.

On April 17, 2016, Plaintiff emailed management expressing his dissatisfaction with the Agency's remedial response. PCS No. 58, ECF No. 42. Kuchera replied, "Please wait. There are pending actions." *Id.* at No. 59.

Plaintiff requested mediation on May 21, 2016, Kuchera agreed to enter into the Alternative Dispute Resolution (hereinafter "ADR") process on July 13, 2016, and Mediation took place on July 14, 2016. DCS No. 30, ECF No, 32. No resolution could be agreed upon with ADR so Plaintiff filed his formal Equal Employment Opportunity (hereinafter "EEO") complaint on July 24, 2016. *Id.* at No. 31.

On August 5, 2016, the Agency issued a Letter of Reprimand (hereinafter "Reprimand") to Quenga, in which the Agency acknowledged that Quenga had apologized, but said that "[i]n your apology you neither acknowledged the derogatory commentary, nor your participation in it." *Id.* at No. 27. The reprimand also pointed out the specific Agency standards of conduct that were violated. *Id.* at No. 28. The Reprimand stated the recommended penalty for Quenga's offence ranged from a written reprimand to a fourteen-day suspension, and that a written reprimand was deemed sufficient to "impress upon [Quenga] the seriousness of [his] offenses and to deter any future misconduct on [his] part." Defs.' Ex. G at 2, ECF No. 34-8. The Reprimand also advised that future misconduct may subject Quenga to "more severe disciplinary action, up to and including [his] removal from the [Agency]." *Id.* A copy of the Reprimand was to be placed in Quenga's employee file "for a period not to exceed eighteen . . . . months." *Id.*

## II. Procedural Background

Plaintiff's July 24, 2016, EEO complaint led to the Agency's investigation and compiling of the Summary of Investigation on March 6, 2017. Mot. at 13, ECF No. 31. On March 9, 2017, Plaintiff was provided a copy of the investigative file with a notice of his right to request a hearing. *Id.* On March 18, 2017, Plaintiff requested a hearing and ultimately the EEO Administrative Judge ruled in favor of the Agency on summary judgment. *Id.*

On May 10, 2019, Plaintiff filed his Complaint in federal court. ECF No. 1. Defendants' Answer was filed on October 7, 2019. ECF No. 9.

On April 12, 2021, Defendants filed their Motion for Summary Judgment. ECF No. 31. Plaintiff's Opposition was filed on May 15, 2021. ECF No. 42. Defendants' subsequent Reply was filed on June 8, 2021. ECF No. 50.

## III. Legal Standard

A motion for summary judgment shall be granted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

Generally, the burden is on the moving party to demonstrate that it is entitled to summary judgment. *Margolis v. Ryan*, 140 F.3d 850, 852 (9th Cir. 1988). "The moving party may produce evidence negating an essential element of the nonmoving party's case, or . . . . show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1106 (9th Cir. 2000) (reconciling *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970) and *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)). The nonmoving party must then "do more than simply show that there is some metaphysical doubt as to the material facts" but must show specific facts which raise a genuine issue for trial. *Matsushita Elec. Indus.*

1    *Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). A genuine issue of material fact will exist

2    "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."

3    *Anderson*, 477 U.S. at 248.

4        In ruling on a motion for summary judgment, a court construes the evidence in the light

5    most favorable to the non-moving party. *Barlow v. Ground*, 943 F.2d 1132, 1135 (9th Cir. 1991).

6    "[T]he judge's function is not to weigh the evidence and determine the truth of the matter but to

7    determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

8    **IV. Discussion**

9        The Ninth Circuit has used a three-prong test for the adequacy of a hostile work

10    environment claim:

11        To survive summary judgment, the respondent must submit cognizable evidence
         sufficient to establish a jury question on whether the victim (1) was subjected to
12        verbal or physical conduct of a sexual nature, (2) that was unwelcome; and (3)
         that was sufficiently severe or pervasive to alter the conditions of the victim's
13        employment and create an abusive working environment. The respondent must
         present sufficient evidence for a jury question on whether the work environment
14        was "both objectively and subjectively offensive, one that a reasonable person
         would find hostile and one that the victim in fact did perceive to be so."

15

16    *E.E.O.C. v. Prospect Airport Servs., Inc.*, 621 F.3d 991, 997 (9th Cir. 2010) (citations omitted).

17    *See also Fuller v. City of Oakland*, 47 F.3d 1522, 1527 (9th Cir. 1995); *Ellison v. Brady*, 924

18    F.2d 872, 875–76 (9th Cir. 1991).

19        After determining that the victim was subject to a hostile work environment, the Ninth

20    Circuit performs a separate analysis to determine whether the employer can be held liable for

21    said hostile work environment. *Prospect Airport Servs.*, 621 F.3d at 1001; *Fuller*, 47 F.3d at

22    1528-29; *Ellison*, 924 F.2d at 880-881.

23        In their Motion for Summary Judgment, Defendants use a different, five-prong test:

24        To establish a claim of harassment, a plaintiff must show that they (1) belong to a
         statutorily protected class; (2) they were subjected to harassment in the form of

unwelcome verbal or physical contact involving the protected class; (3) the harassment complained of was based on their statutorily protected class; (4) the harassment affected a term or condition of employment and/or had the purpose or effect of unreasonably interfering with the work environment and/or creating an intimidating, hostile, or offensive work environment; and (5) there is a basis for imputing liability to the employer.

Mot. at 10, ECF No. 31 (citations omitted).

Defendants go on to analyze the facts using this five-prong test, ultimately conceding that "elements one, two and three are possibly satisfied for purposes of this Summary Judgment motion." *Id.* at 13. However, they do argue that elements four and five are not satisfied. *Id.* at 13-21. Upon reviewing relevant case law, the court finds the Ninth Circuit test (hereinafter "*Ellison* test") to be the most appropriate framework to analyze this Motion. Though Defendants applied a different test in their Motion[2], their arguments and concessions are mostly applicable to the *Ellison* test.

### 1. Conduct of a Sexual Nature

For the purposes of their Motion, Defendants concede that Plaintiff "was subjected to harassment based on his sex/gender identity (male) and sexual orientation (perceived homosexual), when a compromising picture of [Plaintiff] was posted to Facebook and inappropriate comments were made about the picture." DCS No. 1, ECF No. 32. Specifically, some of the comments[3] implied that Plaintiff was a homosexual. Mot. at 16-18, ECF No. 31. The Ninth Circuit has held that suggesting someone is a homosexual can contribute to a hostile work environment. *See Prospect Airport Servs.*, 621 F.3d at 995. Accordingly, the court finds that a

---

[2] In setting forth this five-part test, Defendants cite to an out-of-circuit case and a case from Washington state: *Henson v. City of Dundee*, 682 F.2d 897 (11th Cir. 1982) and *Glasgow v. Georgia-Pacific Corp.*, 103 Wash.2d. 401, 406-08, 693 P.2d 708 (1985). *See* Mot. at 10, ECF No. 31.

[3] Though the first element of the *Ellison* test specifies "verbal or physical conduct," the Ninth Circuit has found that written communication can contribute to a hostile work environment. *See Prospect Airport Servs.*, 621 F.3d at 995 (harassment included love letter); *see also Brooks*, 229 F.3d at 927; *Ellison*, 924 F.2d at 874.

1  reasonable jury could find that Plaintiff was subjected to physical or verbal conduct of a sexual

2  nature.

### 2. Unwelcomeness

4      In their Motion, Defendants concede that the second element of their five-prong test is

5  possibly satisfied for the purposes of this summary judgment. Mot. at 18, ECF No. 32. This

6  element requires "unwelcomed verbal or physical contact." Also, the Ninth Circuit has held that

7  "unwelcomeness has to be communicated." *See Prospect Airport Servs.*, 621 F.3d at 998. Here,

8  Plaintiff clearly communicated unwelcomeness when he submitted the incident report to his

9  supervisors; this unwelcomeness appears to have been acknowledged by both the Agency and

10 Quenga in their remedial responses. DCS Nos. 12-19, 23-28, ECF No. 32. Defendants have

11 never attempted to argue that the posting of the photos at issue and the following comments were

12 not unwelcome. Opp'n ECF No. 32. Therefore, the court finds that the issue of unwelcomeness

13 is undisputed in Plaintiff's favor.

### 3. Severe or Pervasive

15     "For sexual harassment to be actionable, it must be sufficiently severe or pervasive to

16 alter the conditions of the victim's employment and create an abusive working environment."

17 *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 106 S. Ct. 2399, 405 L. Ed. 2d 49 (quoting

18 *Henson v. Dundee*, 682 F.2d 897, 904 (1982); quotes and brackets omitted).

19     In their Motion, Defendants argue that Plaintiff's claim stems from an isolated incident,

20 which was not sufficiently severe or pervasive enough to create a hostile work environment.

21 Mot. at 14-17, ECF No. 31. For a single incident to create a hostile work environment, it must be

22 extremely severe. *See Brooks v. City of San Mateo*, 229 F.3d 917, 926 (9th Cir. 2000) (citing

23 *Faragher v. City of Boca Raton*, 524 U.S. 775, 788, 118 S. Ct. 2275, 141 L. Ed. 2d 662 (1998)).

24 However, given the temporal ambiguity of Quenga's post and the subsequent comments, it is

difficult to say Plaintiff experienced a mere "isolated incident."

*Brooks* provides some guidance on what may be considered an "isolated incident." *See Brooks*, 229 F.3d at 924. In *Brooks,* the male harasser physically approached the female plaintiff/victim at work. *Id.* He then made sexually aggressive and inappropriate comments and assaulted her by placing his hand on her stomach and fondling her breast beneath her sweater and bra. *Id.* The plaintiff immediately reported the incident, and the following day, the harasser was placed on administrative leave pending an investigation. *Id.* Following the investigation, the employer began termination proceedings against the harasser, and the harasser was prosecuted. *Id.* Regarding her hostile work environment claim, the plaintiff argued that the harassment was not a single assault, but a course of conduct, with each of the touchings constituting a separate incident. *Id.* The court disagreed, reasoning that it "happened within the course of a few minutes and was part of a single episode." *Id.* Additionally, [harasser] had no chance to become bolder because [employer] removed him from the workplace once his actions were uncovered. *Id.*

The facts at hand are distinguishable from the *Brooks'* perspective of an "isolated incident." Unlike in *Brooks,* Quenga did not approach Plaintiff, harass him, and leave. Rather, Quenga took photos of Plaintiff during work hours, posted them online after work hours, received comments and "likes" from numerous strangers over a period of time (some of whom include other Agency employees), and replied to some of the comments. At some point, some of Plaintiff's co-workers saw the post. Two days after the pictures were posted, Plaintiff was informed of the post by his co-workers at work who had evidently seen the post; there was laughter. Plaintiff submitted an incident report to his supervisors. "About a week or two after," Quenga approached Plaintiff in person in the restroom at work, attempting to discuss the post; Plaintiff believed (or maybe considered) this was inappropriate. PCS No. 61, ECF No. 43. Under *Brooks* and considering the facts in the light most favorable to the Plaintiff, these facts support

an inference that the following are separate incidents that Plaintiff experienced as harassing: (1) Quenga uploading the photos without his knowledge, (2) Plaintiff hearing of the post from his co-workers, and (3) Plaintiff's encounter with Quenga in the restroom. Therefore, the court finds that a reasonable jury could find that that Plaintiff's claim of harassment arises from more than an "isolated incident."

However, establishing that the harassment was more than a mere "isolated incident" is not sufficient to save Plaintiff from summary judgment on the issue of severity and pervasiveness. Plaintiff still must show that the harassment was sufficiently severe or pervasive to alter the terms or conditions of his employment. *Meritor*, 477 U.S. at 67 S. Ct. at 2405. To survive summary judgment, Plaintiff must show that his workplace was "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive." *Nichols v. Azteca Restaurant Enterprises, Inc.*, 256 F.3d 864, 871–72 (9th Cir. 2001) (quoting *Faragher*, 524 U.S. at 787). This is based on the totality of the circumstances. *Fuller*, 47 F.3d at 1527 (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23, 114 S. Ct. 367, 371 L. Ed. 2d 295 (1993).

Plaintiff has met his burden to show that he subjectively believed his work environment was hostile or abusive. The fact that Plaintiff has filed this claim in federal court after attempting other means of remedy supports an inference to that effect. Also, Plaintiff has alleged that the Agency's punishment of Quenga was inadequate, and that the Agency is not enforcing its rules. Opp'n at 15, ECF No. 42; PCS No. 24, ECF No. 43. This supports an inference that he believes future harassing incidents are likely to occur.

The next issue is whether the harassment was objectively offensive for the purposes of a hostile work environment claim. "[O]bjective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 S. Ct. 998, 1003 L. Ed. 2d 201

(1998) (citing *Harris*, 510 U.S. at 21, 114 S. Ct. at 371). Therefore, to assess objective severity and pervasiveness, the court will judge from the perspective of a reasonable man[4] in Plaintiff's circumstances. The factors to consider are "frequency, severity and intensity of interference with working conditions." *Brooks*, 229 F.3d at 924-25 (citing *Harris*, 510 U.S. at 23, 114 S. Ct. 367).

"The required showing of severity or seriousness of the harassing conduct varies inversely with the pervasiveness or frequency of the conduct." *Ellison*, 924 F.2d at 878 (citing *King v. Board of Regents*, 898 F.2d 533, 537 (7th Cir.1990)). Here, the issue of pervasiveness requires a unique approach due to the temporal ambiguity of interactions with Quenga's post. For example, each comment on Quenga's post from an Agency employee could be considered a separate incident. To resolve this, the court holds that it would not matter whether a jury finds that the facts presented constitute two incidents, three incidents, or thousands of incidents. Functionally, in this case, any increase in the number of incidents distinguished by a trier of fact would proportionally reduce the severity of each incident, as the total severity of harassment experienced would be spread increasingly thin. Furthermore, the impact of this increase in frequency would be offset by the proportionately reduced required showing of severity.[5] *Id.* It follows that a jury's finding of frequency given the facts presented would have a near zero-sum effect on the hostile work environment analysis. Therefore, the court will instead focus its pervasiveness analysis on whether a reasonable person in Plaintiff's position would have expected the harassment to continue.

One circumstance to consider for pervasiveness is whether Plaintiff reasonably feared the harassment would continue in the future because the Agency encouraged or tolerated Quenga's

---

[4] The Ninth Circuit uses a "reasonable man/woman" standard. *See Prospect Airport Servs.*, 621 F.3d at 995; *Ellison*, 924 F.2d at 879.

[5] Inversely, if a jury finds a lower frequency under these facts, the average severity of conduct would proportionately increase, and the required showing of severity would proportionately increase.

conduct. *See Brooks*, 229 F.3d at 924. This is inferred from the Agency's response to learning of the harassment because "only the employer can change the terms and conditions of employment."[6] *Id.* Furthermore, the duty of an employer to remedy sexual harassment and prevent future occurrences kicks in when the employer learns of the harassment. *Id.*

Plaintiff asserts that "[he] saw the Agency's public inaction condoning Quenga's misconduct." PCS No. 24, ECF No. 43. While this is sufficient to allege that Plaintiff subjectively believed the Agency condoned Quenga's misconduct, additional supporting facts must be alleged to show objective belief, i.e., that a reasonable man in Plaintiff's position would believe the Agency condoned Quenga's misconduct. Plaintiff asserts "[t]he Agency went extra easy on Quenga." *Id*. at No. 43. As examples, Plaintiff alleges "[t]he Agency never required Quenga to write a memo/incident report as is standard practice." *Id.* at No. 47. Also, that Leon Guerrero's April 10, 2016, email to Quenga "downplay[ed] the incident and seemingly condon[ed]/endors[ed] the Photo and comments." *Id.* at No. 44. Also, that Kuchera's reply to Plaintiff's April 17, 2016, email "can be reasonably construed as instructing [Plaintiff] that he should be more quiet and obedient and accept the Agency response, action, or inaction without question." *Id.* at No. 59. However, these allegations are insufficient to show that the Agency condoned Quenga's conduct.

In *Prospect Airport Servs.*, the plaintiff was continuously harassed by a co-worker at work over the course of several months. 621 F.3d at 993-96. The Ninth Circuit questioned the adequacy of employer response when management did nothing to stop the harassment and told the plaintiff that the harassment "was a joke" and that he should console himself by singing "I'm too sexy for my shirt." *Id.* Here, Leon Guerrero telling Quenga in his April 10, 2016, email that

---

[6] Adequacy of employer response is considered both when establishing hostile work environment, *Prospect Airport Servs.*, 621 F.3d at 1000, and for the subsequent liability analysis, *Id.* at 1001.

he was "sure there was no ill intent on [Quenga's] part when posting the pictures/comments," before continuing, "[s]ome officers if not most, prefer their privacy rather than being exposed especially via social media" is not analogous to the employer response in *Prospect Airport Servs.* Unlike the employer in *Prospect Airport Servs.*, the Agency responded to Plaintiff on the day of his complaint informing him that they would investigate the incident. Defs.' Ex. H, ECF No. 34-9. They then delivered the Letter of Instruction to Quenga within five days of receiving the complaint. Defs.' Ex. N, ECF No. 34-15. Included in the Letter of Instruction were orders that if he "engaged in the conduct described in the allegations, [he] must immediately cease and desist from such conduct." *Id.* The Agency issued the Letter of Reprimand less than four months later, assigning a punishment in accordance with the recommended penalty range. DCS No. 27, ECF No. 32. Additionally, all of the objectionable conduct took place during a period of less than a week. Soon after the Agency began to take action, the post was deleted and the objectionable conduct ceased. Considering the evidence in the light most favorable to the Plaintiff, the court finds there are overwhelming facts which show the Agency responded in a timely manner reasonably sufficient to prevent future misconduct. This supports a finding of low pervasiveness, weighing in favor of summary judgment.

The next issue is whether the harassing conduct viewed as a whole was sufficiently severe so that a reasonable man in Plaintiff's position would believe that the terms or conditions of his employment have changed. There is no strict test for severity. "Common sense, and an appropriate sensitivity to social context, will enable courts and juries to distinguish between simple teasing or roughhousing among members of the same sex, and conduct which a reasonable person in the plaintiff's position would find severely hostile or abusive." *Oncale*, 523 U.S. at 82 S. Ct. at 1003. The court considers "all the circumstances" when determining severity. *See id.; Fuller*, 47 F.3d at 1527.

One circumstance considered for severity is whether the conduct was physically threatening or humiliating, as opposed to a "mere offensive utterance." *Faragher*, 524 U.S. at 787-88. Here, in no regard was Quenga's conduct physically threatening or humiliating. This circumstance weighs heavily in favor of summary judgment, especially when compared to cases involving egregious physical threats and humiliation where a hostile work environment was not found. *See Brooks*, 229 F.3d (harasser placed his hand on victim's stomach, forced his hand under her sweater and bra to fondle her bare breast, and after getting pushed away, verbally implied he would escalate the assault and approached her in furtherance of that intent); *Al-Dabbagh v. Greenpeace, Inc.*, 873 F.Supp. 1105, 1108 (N.D.Ill.1994) (harasser "slapped [plaintiff], tore off her shirt, beat her, hit her on the head with a radio, choked her with a phone cord and ultimately forced her to have sex with him"). The courts in *Brooks* and *Al-Dabbagh* held that a hostile work environment did not exist because the harassment was an isolated incident. Even though a reasonable jury may find that this case involves more than a single isolated incident, the court still finds these cases appropriate to put severity into perspective due to the sheer difference in egregiousness.[7] Any mental and emotional distress a reasonable jury may find Plaintiff experienced as a result of his image being posted online and getting joked about is incomparable to the mental, emotional, and physical trauma of being sexually assaulted and raped. The sheer difference in egregiousness between these cases and the case at hand weighs in favor of summary judgment.

"Simple teasing," offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the "terms and conditions of employment." These standards for judging hostility are sufficiently demanding to ensure that Title VII does not

---

[7] Furthermore, the reasoning for the general preclusion of isolated incidents is that "only the employer can change the terms and conditions of employment." *See Brooks*, 229 F.3d at 924. This issue is discussed separately above.

become a "general civility code." *Faragher*, 524 U.S. at 788. *Oncale* provides some guidance as to what is considered "simple teasing." In *Oncale,* the Supreme Court stated that Title VII "does not reach genuine but innocuous differences in the ways men and women routinely interact with members of the same sex and of the opposite sex." *Oncale,* 523 U.S. at 81 S. Ct. at 1002-03. A plaintiff must show "that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted discrimination because of sex." *Id.* (quotation marks and ellipses omitted). In this regard, the evidence as presented provides two plausible theories: (1) the commenters on Quenga's post actually believed Plaintiff was homosexual and were harassing him because of it, and (2) the commenters did not necessarily believe Plaintiff was homosexual but were poking fun at the perceived homosexual appearance of Plaintiff in the photo. While the humor in the latter theory may be in poor taste, based on established case law, the court would categorize it as simple teasing or male-on-male horseplay as discussed in *Oncale.* Plaintiff asserts that "[i]t is simply irrelevant whether employees actually believed that [Plaintiff] or Lope were homosexual or simply enjoyed mocking them for not conforming to masculine stereotypes, as this is prohibited harassment based on sex nonetheless." Opp'n at 25, ECF No. 42. While this may be true for the issue of "conduct of a sexual nature" discussed above under heading IV.1 of this Order, the court finds the employees' perception of Plaintiff's sexuality to be relevant to the issue of discrimination versus simple teasing. Regardless, viewing the evidence in the light most favorable to the Plaintiff, a reasonable jury may find that the employees did believe Plaintiff was a homosexual, assigning a discriminatory quality to the employees' comments, which supports sufficient severity to change the terms or conditions of employment. This weighs against summary judgment.

Another circumstance to consider is whether the harassment unreasonably interfered with Plaintiff's work performance. *Faragher*, 524 U.S. at 788; *see also Prospect Airport Servs.*, 621

F.3d at 996 (hostile work environment was found when "constant pressure" from harasser's unwanted sexual advances over the course of four or five months with a tolerant response from employer caused victim's work performance to suffer resulting in a demotion). Here, Plaintiff has not alleged that the harassment impacted his performance at work. Compl., ECF No. 1; Opp'n, ECF No. 34. This circumstance weighs in favor of summary judgment.

In conclusion, considering all of the circumstances, the court holds that no reasonable jury could find that the harassment was severe or pervasive enough to alter the terms or conditions of Plaintiff's employment.

### 4. Employer Liability

Since there are insufficient facts to establish the presence of a hostile work environment, employer liability for that hostile work environment is moot.

## V. Conclusion

Considering the facts presented in the light most favorable to the Plaintiff, the court concludes that no reasonable jury could find that the harassment here was severe or pervasive enough to alter the terms or conditions of Plaintiff's employment. This is a critical element of Plaintiff's claim. Therefore, the court hereby **GRANTS** Defendants' Motion for Summary Judgment.[8]  The Clerk's Office is ordered to enter judgment accordingly.

**IT IS SO ORDERED.**



**/s/ Michael J. Bordallo**
**U.S. Magistrate Judge**
**Dated: Aug 04, 2022**

---

[8] In light of the court's ruling, the Joint Motion for a Status Hearing (ECF No. 54) is denied as moot.