THE DISTRICT COURT OF GUAM

| | |
|---|---|
| REYNALD LAPUEBLA,<br><br>    Plaintiff,<br><br>vs.<br><br>KRISTI NOEM, Secretary,<br>U.S. DEPARTMENT OF HOMELAND<br>SECURITY, U.S. CUSTOMS AND<br>BORDER PROTECTION,<br><br>    Defendants. | CIVIL CASE NO. 19-00097<br><br>**DECISION AND ORDER**<br>Granting Defendants' Motion for<br>Summary Judgment (ECF No. 31) |

Pending before the court is Defendants' Motion for Summary Judgment (hereinafter "Motion") on remand from the Ninth Circuit Court of Appeals. ECF Nos. 31 and 59. This case stems from a social media post of photos of the Plaintiff taken during a training exercise at work. The photos were posted by the Plaintiff's co-worker, without the Plaintiff's permission, to a Facebook group comprised of thousands of U.S. Customs and Border Protection (hereinafter "Agency") employees. The photos made it appear as if Plaintiff was sodomizing a fellow Agency employee which elicited inappropriate comments, some of which made fun of the Plaintiff, implying he was homosexual. Plaintiff learned of the post while he was at work and reported the incident to his supervisors. The post was online for, at most, seven days when the Plaintiff's co-worker deleted the post as instructed by Agency supervisors.

Upon reviewing the record before it and relevant case law, the court hereby issues this Order **GRANTING** Defendants' Motion for Summary Judgment.

## I.  Facts

This case is a hostile work environment claim made pursuant to Title VII of the Civil Rights Act of 1964. The following is a summary of material facts with the evidence construed in the light most favorable to the Plaintiff.

### A.  Harassment and Social Media Post

Plaintiff and nine other Agency employees engaged in a training exercise on Monday, April 4, 2016, conducted by Christopher Quenga and another Agency employee, who volunteered as instructors for the training. Defendants' Concise Statement of Material Facts (hereinafter "DCS") Nos. 2-4, ECF No. 32. During the training exercise, at least two photos were taken of Plaintiff. DCS No. 7, ECF No. 32; Plaintiff's Response and Counter to Agency's Material Facts (hereinafter "PRC") No. 7, ECF No. 43. One photo made it appear as if Plaintiff was sodomizing fellow Agency employee Mark Lope. PRC No. 14, ECF No. 43.

On or about April 5, 2016, sometime after the training, Quenga posted two of these photographs to a Facebook group whose members included thousands of Agency employees. DCS No. 11, ECF. No. 32; Plaintiff's Concise Statement of Material Facts (hereinafter "PCS") No. 6, ECF No. 43. Other group members made inappropriate comments on the post, at least some of which made fun of the Plaintiff, implying he was homosexual. Defs.' Ex. F, ECF No. 34-7. Quenga replied to some of these comments, also making fun of Plaintiff. *Id*.

Plaintiff was informed by his co-workers about the post on April 7, 2016; there was laughter. DCS No. 11, ECF No. 32. Plaintiff wrote to all of the supervisors, including Former Port Director Andrew Kuchera, to report the incident. *Id*. at No. 12 and Defs.' Ex. H, ECF No. 34-9. At some point after the incident, Quenga approached Plaintiff in the restroom at work attempting to discuss the post. Pl. Dep. Tr. at 232, attached as Pl.'s Ex. 1, ECF No. 43-1. Plaintiff refused to talk to Quenga because he was still upset. *Id*.

### B.  Employer Response

On April 7, 2016, Kuchera replied to Plaintiff indicating that he would like to gather as much information as possible before moving forward and that he would address the

incident Port-wide the next day. Defs.' Ex. H, ECF No. 34-9. On the same day, Assistant Port Director Gerald Aeverman sent an email to other supervisors regarding a policy memo about using good judgment when posting on social media. PCS No. 33, ECF No. 43; Pl.'s Ex. 10, ECF No. 43-1. The next day, April 8, 2016, Kuchera sent an email expressing concerns about the Facebook group (to which the photos were posted) to the Agency's Joint Intake Center. PCS No. 35, ECF No. 43. That same day, Plaintiff called Chief Fraim Leon Guerrero to complain about the post and the comments. *Id*. at No. 36.

At some point, Quenga was called into Kuchera's office to discuss the post. Quenga Unsworn Decl. at 7, attached as Defs.' Ex. D, ECF No. 34-5. The following day, Quenga was called into Assistant Port Director Aevermann's office to discuss the post. *Id*. During both meetings, Quenga was ordered to delete the post. *Id*.

On April 10, 2016, Leon Guerrero emailed Quenga explaining that some officers "prefer their privacy rather than being exposed especially via social media" and stated it was a "[l]esson learned for all as [he is] sure other Ports are addressing these same issues; hopefully nobody gets compromised." Pl.'s Ex. 12 at 1, ECF No. 43-1. On August 5, 2016, the Agency issued a Letter of Reprimand to Quenga which pointed out what CBP Standards of Conduct were violated and also stated the recommended penalty range for Quenga's offense, which the Agency determined that a written reprimand was sufficient. DCS Nos. 26 and 28, ECF No. 32; Defs.' Ex. G at 2, ECF No. 34-8.

## II.     Procedural Background

On April 12, 2021, Defendants filed their Motion for Summary Judgment. ECF No. 31. Plaintiff filed his Opposition on May 14, 2021. ECF No. 42. Defendants filed their Reply on June 8, 2021. ECF No. 50. On August 4, 2022, this court granted the Defendants' Motion for Summary Judgment and the Clerk's judgment was entered in favor of the Defendants and against the Plaintiff. ECF Nos. 55 and 56.

Plaintiff gave notice of his appeal to the Ninth Circuit on October 3, 2022. ECF

No. 58. On August 20, 2024,[1] the Ninth Circuit issued its Memorandum Decision which vacated this court's August 4, 2022 Order and remanded the matter for the court to "(1) properly apply the inverse relationship between severity and pervasiveness, and (2) give further consideration to the agency's motion for summary judgment in light of [its] recent decision in *Okonowsky v. Garland*[.]" *LaPuebla v. Mayorkas*, No. 22-16520, 2024 WL 3874230, at *1 (9th Cir. Aug. 20, 2024).

Following the Mandate issued on October 15, 2024 (ECF No. 63), this court set and held a Scheduling Conference on November 26, 2024. ECF No. 64. After discussing the issues on remand, the court ordered the parties to file supplemental briefs on the matter. Defendants filed their Supplemental Brief in Support of Defendants' Motion for Summary Judgment on January 10, 2025. ECF No. 68. Plaintiff filed his Supplemental Brief on February 7, 2025. ECF No. 71. Defendants filed their Supplemental Reply on February 24, 2025. ECF No. 74.

**III.    Legal Standard**

A motion for summary judgment shall be granted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

The moving party has the initial burden of production and the ultimate burden of persuasion on the motion, wherein it must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its burden of persuasion at trial. *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). If the moving party carries this burden, the nonmoving party must produce evidence to support its claim or defense. *Id*. at 1103. If the nonmoving party fails to produce evidence to

---

[1] This date refers to the date the Memorandum Decision was filed in the Ninth Circuit Court of Appeals Case No. 22-16520, which was docketed as ECF No. 59 in this case on August 21, 2024, because of the time difference between Guam and the west coast of the United States. All references to ECF numbers refer to the docket of this instant case, Civil Case No. 19-00097.

create a genuine issue of material fact, the moving party is entitled to summary judgment. *Id*. (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

In ruling on a motion for summary judgment, a court construes the evidence in the light most favorable to the nonmoving party and determines whether summary judgment is appropriate for the moving party. *Zetwick v. County of Yolo*. 850 F.3d 436, 441 (9th Cir. 2017) (citing *Arizona ex rel. Horne v. Geo Grp., Inc.*, 816 F.3d 1189, 1207 (9th Cir. 2016)). "[T]he judge's function is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

### IV. Discussion

To survive summary judgment, a plaintiff's claim for hostile work environment must "submit cognizable evidence sufficient to establish a jury question on whether the victim (1) was subjected to verbal or physical conduct of a sexual nature, (2) that was unwelcome; and (3) that was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *EEOC v. Prospect Airport Servs., Inc.*, 621 F.3d 991, 996-997 (9th Cir. 2010) (citing *Fuller v. City of Oakland*, 47 F.3d 1522, 1527 (9th Cir. 1995)).

As to the third element listed above, Plaintiff must show that his work environment was both subjectively and objectively hostile. *See Dominguez-Curry v. Nev. Transp. Dept.*, 424 F.3d 1027, 1034 (9th Cir. 2005). Plaintiff's filing of this case lends itself to an inference that he subjectively viewed his work environment as hostile. As such, the discussion below is limited to whether his work environment was objectively hostile.

#### A. Inverse Relationship Between Severity and Pervasiveness

In its August 4, 2022 Order Granting Defendants' Motion for Summary Judgment, this court applied the Ninth Circuit's inverse relationship analysis of severity and pervasiveness established in *Ellison v. Brady*, 924 F.2d 872 (9th Cir. 1991). Order at 11, ECF No. 55. The court explained that the issue of pervasiveness required a unique approach due to "the temporal ambiguity of the interactions with Quenga's post." *Id*. The court held that it

would not matter whether a jury finds that the facts presented constitute two, three, or thousands of incidents because any increase in the number of incidents distinguished by a trier of fact would proportionally reduce the severity of each incident, as the total severity of harassment experienced would be spread increasingly thin. *Id*. Further, the court explained that the impact of this increase in frequency would be offset by the proportionately reduced required showing of severity and that a jury's finding of frequency would have a near zero-sum effect on the hostile work environment analysis. *Id*.

On appeal, the Ninth Circuit held that this was a misapplication of the *Ellison* inverse relationship analysis because no such "zero-sum effect" exists. *LaPuebla*, 2024 WL 3874230, at *1. The Ninth Circuit explained that the inverse relationship reduces a plaintiff's burden to demonstrate the requisite severity of each harassing incident, provided he can show that the harassment occurred with greater pervasiveness. *Id*. (citing *Ellison*, 924 F.2d at 878). The Ninth Circuit remanded the matter for this court to correctly apply the inverse relationship to Plaintiff's case. *Id*.

To succeed on a Title VII hostile work environment claim, a plaintiff must demonstrate that the harassment was "sufficiently severe or pervasive" as to "alter the conditions of [his] employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)). "The working environment must both subjectively and objectively be perceived as abusive." *Fuller*, 47 F.3d at 1527 (citing *Harris*, 510 U.S. at 21-22). "[O]bjective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998) (citing *Harris*, 510 U.S. at 21). Therefore, to assess the objective severity and pervasiveness, the court will judge from the perspective of a reasonable man in Plaintiff's circumstances.

In *Ellison v. Brady*, the court held that the "required showing of severity or seriousness of harassing conduct varies inversely with the pervasiveness or frequency of the

conduct." *Ellison*, 924 F.2d at 878 (citing *King v. Board of Regents*, 898 F.2d 533, 537 (7th Cir. 1990)). Accordingly, for a single incident to support a hostile work environment claim, the incident must be extremely severe. *Brooks v. City of San Mateo*, 229 F.3d 917, 926 (9th Cir. 2000) (citing EEOC Policy Guide, page 6 *supra*, at 405:6690-91 ("[A] single unusually severe incident of harassment may be sufficient to constitute a Title VII violation; the more severe the harassment, the less need to show a repetitive series of incidents. This is particularly true when the harassment is physical.")).

Inversely, a plaintiff can support a hostile work environment claim with evidence of less severe acts repeated over a period of time because the cumulative effect of those acts may be considered sufficiently pervasive to alter the conditions of employment. *See Zetwick*, 850 F.3d at 444 (noting "it is not possible to determine whether the environment was 'hostile or abusive' without considering *the cumulative effect of the conduct at issue* to determine whether it was sufficiently 'severe or pervasive' to alter the conditions of the workplace) (emphasis in original) (quoting *Horne*, 816 F.3d at 1207). This inverse relationship reduces a plaintiff's burden to demonstrate the requisite severity of each harassing incident, provided that he can show that the harassment occurred with greater pervasiveness. *See LaPuebla*, 2024 WL 3874230, at *1 (citing *Ellison*, 924 F.2d at 878).

Plaintiff argues that there is sufficient evidence from which a reasonable juror could conclude under the totality of the circumstances, that the pervasive effect of the conduct (*i.e.* the social media post and its aftermath) "made it more difficult for LaPuebla to do his job, take pride in his work, and desire to stay in his position." Pl. Suppl. Brief at 5, ECF No. 71. In support of this argument, Plaintiff relies on the "permanently and infinitely viewable" nature of social media posts, the reaction of other employees and management-level officials, and the Agency's response to the conduct. *Id*. at 6-7 (citing *Okonowsky v. Garland*, 109 F.4th 1166, 1185 (9th Cir. 2024)).

Plaintiff is correct in stating that the objective hostility of a working environment must be analyzed by looking at the totality of circumstances surrounding his claim. *See Clark*

*Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 270-71 (2001) (*per curiam*). This would include assessing the "frequency of the discriminatory conduct; its severity; whether it [was] physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfere[d] with an employee's work performance." *Id*. (citation omitted).

However, Plaintiff's characterization of the social media post as permanently and infinitely viewable is not supported by the record. Though the specific date on which the post was deleted from the Facebook group is disputed, the earliest being April 7, 2016, and the latest being April 12, 2016, the fact that it was deleted is undisputed and Plaintiff has not produced evidence supporting the assertion that the photos are "permanently and infinitely" viewable. This undermines Plaintiff's argument that the pervasive effect of the conduct created a hostile working environment. The court concedes that there is no such thing as deletion of online posts in an absolute sense because posts can be downloaded or saved by third parties and, even if deleted from where they were originally posted, posts are often stored on a server.[2] However, even if Quenga's post continued to be stored on a server, it was no longer easily accessible or reviewable on the Facebook Group's page after it was deleted. Additionally, the record does not support that the photos continued to be circulated by other means after Quenga deleted the post.

Further, the record does not support Plaintiff's assertion that the reaction of other Agency employees and management-level officials and the Agency's response to Plaintiff's initial complaint had a sufficiently pervasive effect to alter the Plaintiff's employment conditions and create an abusive working environment. Evidence of non-severe conduct has been found sufficiently pervasive to create triable issues of material fact where the conduct occurred over several months or years. *See Zetwick*, 850 F.3d at 443-44 (summary judgment inappropriate where male supervisor greeted female plaintiff with unwelcome hugs more than one hundred times over 12-year period); *Reynaga v. Roseburg Forest Products*, 847 F.3d 678,

---

[2] *See generally* Randy L. Dryer, *Litigation, Technology & Ethics: Teaching Old Dogs New Tricks or Legal Luddites are No Longer Welcome in Utah*, 28-JUN Utah B.J. 12, 16 (May/June 2015).

683, 687-88 (9th Cir. 2017) (genuine dispute of material facts found where plaintiff was subjected to repeated instances of explicit racial and national origin comments and general derogatory comments in the workplace by the lead millwright for at least two years during the course of his employment); *Christian v. Umpqua Bank*, 984 F.3d 801, 811 (9th Cir. 2020) (genuine disputes of material fact exist as to the severity or pervasiveness of the harassment where bank customer repeatedly pestered plaintiff (a bank employee), asked her on dates, sent her letters declaring they were soulmates and persisted for many months after plaintiff asked him to stop). Here, the record shows that other Agency employees laughed when the Plaintiff was made aware of the post and that the Agency's swift response to the incident resulted in the deletion of the post after, at most, one week of being online. This undermines Plaintiff's argument that the pervasive effect of the post is sufficient for a reasonable juror to conclude that Plaintiff's work environment was objectively hostile from the perspective of a reasonable man.

Even if the court were to accept Plaintiff's argument about the permanent nature of social media posts, the other factors used to assess the objective hostility of a working environment favor summary judgment for the Defendants. The frequency and severity of the conduct in the instant case do not reach the frequency and severity of conduct in other Ninth Circuit cases where the court held that the conduct could create a hostile workplace. *See Okonowsky*, 109 F.4th at 1172-73 (triable issues of material fact found where male co-worker specifically targeted female plaintiff on several graphic social media posts posted over three months: threatening to gang bang her with other male co-workers and depicting scenes of violence against the plaintiff and women in general); *Nichols v. Azteca Restaurant Enterprises, Inc.*, 256 F.3d 864 (9th Cir. 2001) (finding an objectively hostile environment where plaintiff was subjected to a "relentless campaign of insults, name-calling, and vulgarities" including calling him a "f*****t" and a "f***ing female whore" which occurred at least once a week and often several times a day).

Unlike the numerous social media posts in *Okonowsky* that were posted over several

months, the instant case involves a single post that was online for, at most, about one week. Pl. Dep. Tr. at 21, attached as Pl.'s Ex. 1, ECF No. 43-1. The post received about 108 "likes" and 11 comments. Defs.' Ex. F at 1-4, ECF No. 34-7. Plaintiff characterizes the comments as "sexually charged" that implied Plaintiff was homosexual. Pl. Suppl. Br. at 6. While distasteful, the comments are more akin to simple teasing or offensive utterances that would not amount to discriminatory changes in the terms and conditions of employment. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (noting that courts are directed to look at all the circumstances to determine whether an environment is sufficiently hostile or abusive and that, when properly applied, the standards for judging hostility "will filter out complaints attacking 'the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing.'") (citing *Harris*, 510 U.S. at 21-22 and B. Lindemann & D. Kadue, Sexual Harassment in Employment Law 175 (1992)).

Even when viewed in a light most favorable to the Plaintiff, the comments are not sufficiently severe to create a hostile work environment because of their teasing nature. As Judge Smith noted in his dissent, the record does not indicate that Plaintiff is actually homosexual or that his coworkers or the commenters actually viewed him as homosexual—the "comments are clearly teasing, do not use slurs, do not make threats, and include laughing emojis." *LaPuebla*, 2024 WL 3874230, at *3 (Smith, J. dissenting). The Ninth Circuit has affirmed summary judgment for employers in cases where the commentary was objectively more offensive. *See id.* (citing cases that involved comments that "target[ed] the *actual* identity of the victim and that could be perceived as displaying genuinely discriminatory intent" but the "court held that there was no genuine issue of material fact about severity in any of them.") (emphasis in original).

Further, the conduct was not physically threatening and did not unreasonably interfere with the Plaintiff's work performance. Plaintiff argues that the cumulative effect of the thousands of views of the photos by Agency employees, the conduct of the Plaintiff's co-

workers, supervisors, and superiors and the Agency's response made it more difficult for the Plaintiff to do his job, take pride in his work, and desire to stay in his position. Pl. Suppl. Br. at 7. However, Plaintiff does not offer evidence to support this assertion, and the evidence found in the record relevant to this assertion was that Plaintiff was not getting his preferred schedule to which he was entitled because of his seniority. Pl. Dep. Tr. at 285, attached as Pl.'s Ex. 1, ECF No. 43-1; PCR No. 86, ECF No. 43.

Even when viewing the evidence in a light most favorable to the Plaintiff, no reasonable jury could find that the harassing conduct was severe or pervasive enough to find that Plaintiff was subjected to an objectively hostile work environment.

### B. Consideration of Ninth Circuit's *Okonowsky* Decision

In its August 20, 2024 Memorandum Decision, the Ninth Circuit remanded this case so this court can apply the Ninth Circuit's holdings in *Okonowsky v. Garland* in the first instance because neither the court nor the parties had the benefit of the ruling when briefing or considering the motion. *LaPuebla*, 2024 WL 3874230, at *2.

In *Okonowsky v. Garland*, the plaintiff was a staff psychologist in a federal prison who discovered that her male co-worker operated an Instagram account that was followed by more than one hundred prison employees to which he posted sexually offensive content about work, and that she was a personal target. *Okonowsky*, 109 F.4th at 1171. When she complained about the page to prison leadership, she was told the content was funny and not a problem. *Id*. Two months after reporting the conduct, the prison directed the male co-worker to cease posting because it violated the prison's Anti-Harassment Policy. *Id*. However, the male co-worker continued posting sexually hostile conduct for another month with no action by the prison. *Id*. The court ultimately held that the plaintiff raised triable issues of material fact as to whether the plaintiff experienced a hostile work environment and whether her employer failed to take prompt and effective remedial action to address it. *Id*. at 1188.

The facts in *Okonowsky* differ greatly from the facts in the instant case. First, the sexually offensive content posted by the plaintiff's male co-worker targeted her specifically,

threatening that he and other male co-workers would "gang bang" her; other posts depicted scenes of violence against the plaintiff specifically and women in general and ridiculed the plaintiff in a coarse and degrading manner. *Id*. at 1173. Second, the male co-worker made several of these posts over the course of nearly three months after the plaintiff first lodged her complaint. *Id*. at 1177. It is also noteworthy that although the plaintiff's employer issued a cease-and-desist letter ordering the male co-worker to cease posting immediately and stated that failure to comply would not be tolerated and could result in removal, the male co-worker continued posting for at least three weeks without action by the employer. *Id*. at 1176-77.

Here, Plaintiff's co-worker made one post to a Facebook group page that consisted of 11,000 members from all ranks in the Agency. PCS No. 6, ECF No. 30; DCS Nos. 8-9, ECF No. 32. Of the 11,000 group members, less than one percent of the members interacted with the post via "likes" and it also received only 11 comments. While the image suggested that Plaintiff was sodomizing the other employee in the photo which elicited inappropriate comments on the post and laughter by Plaintiff's other co-workers, the nature of the post is not nearly as severe as the posts described in *Okonowsky*. Also, as discussed above, the Plaintiff has not produced evidence to support the assertion that the permanent and infinitely viewable nature of a social media post makes the conduct sufficiently pervasive.

Further, the delayed action by the plaintiff's employer in *Okonowsky* is in stark contrast to the action taken by the Agency in the instant case. On the day Plaintiff found out about the post and wrote to his supervisors, Assistant Port Director Aeverman sent an email to other supervisors regarding the Agency's policy about using good judgment when posting on social media. PCS No. 33, ECF No. 43; Pl.'s Ex. 10, ECF No. 43-1. Shortly after Plaintiff's initial complaints to his supervisors, Quenga was called to meet with the Port Director and Assistant Port Director (separately) who both ordered Quenga to delete the post. Quenga Unsworn Decl. at 7, attached as Defs.' Exhibit D, ECF No. 34-5. The post was deleted at some point between April 7 and April 12, 2016. Quenga was subsequently issued a formal Letter of Instruction with written order to remove the photos and, later, a Letter of

Reprimand stating the specific Agency standards of conduct that were violated and the recommended penalty range for the offense. DCS No. 24, ECF No. 32; Defs.' Ex. N, ECF No. 34-15; Defs.' Ex. G, ECF No. 34-8.

Unlike in *Okonowsky*, where the court held that a reasonable juror could find that the plaintiff's work environment was objectively hostile and that her employer failed to take prompt and effective remedial action to address the hostile work environment; here, a reasonable juror could not find Plaintiff's work environment was objectively hostile and that the Agency failed to take prompt and effective remedial action.

## V.     Conclusion

Considering the evidence in the light most favorable to the Plaintiff, the court concludes that no reasonable jury could find that the conduct at issue was sufficiently severe or pervasive to alter the terms of the Plaintiff's employment and create a hostile work environment. Therefore, the court hereby **GRANTS** Defendants' Motion for Summary Judgment. The Clerk's Office is ordered to enter judgment accordingly.

**IT IS SO ORDERED.**



/s/ Michael J. Bordallo
U.S. Magistrate Judge
Dated: Jul 18, 2025